United States District Court
Southern District of Texas
ENTERED
November 05, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| J.D.,[1] | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:26-cv-00035 |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM AND RECOMMENDATION

Plaintiff J.D. seeks judicial review of an administrative decision denying her application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). J.D. and Defendant Frank Bisignano, Commissioner of the Social Security Administration (the "Commissioner") have both filed briefs. *See* Dkts. 12, 15. After reviewing the briefing, the record, and the applicable law, I recommend that the Commissioner's decision be affirmed.

## BACKGROUND

On May 8, 2022, J.D. filed a Title II application for disability and disability insurance benefits alleging disability beginning May 17, 2021. Her application was denied and denied again upon reconsideration. On January 30, 2025, an Administrative Law Judge ("ALJ") held a hearing. At the hearing, J.D. voluntarily amended her alleged onset date to May 13, 2022, which is the date she stopped working where her earnings were over the substantial gainful activity level. On March 18, 2025, the ALJ issued a decision, finding that J.D. was not disabled. J.D.

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions. This court has taken that guidance a step further in the interest of claimant's privacy and will use only initials in public opinions.

filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past

> relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

**THE ALJ'S DECISION**

The ALJ found at Step 1 that J.D. "has not engaged in substantial gainful activity since May 13, 2022, the amended alleged onset date." Dkt. 8 at 20.

The ALJ found at Step 2 that J.D. "has the following severe impairments: Crohn's Disease and Barret's Esophagus." *Id.* After reviewing the "paragraph B" criteria,[2] the ALJ found that J.D.'s "medically determinable mental impairment of major depressive disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is, therefore, nonsevere." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id.* at 22.

Prior to consideration of Step 4, the ALJ determined J.D.'s RFC as follows:

---

[2] "The severity of 'mental disorders' is measured using medical criteria ('paragraph A'), functional criteria ('paragraph B'), and an analysis of 'serious and persistent mental disorders' ('paragraph C')." *Vigil v. Berryhill*, No. EP-17-cv-0242, 2018 WL 3233345, at *2 (W.D. Tex. July 2, 2018) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(a)–(c)). A claimant's mental disorder satisfies "paragraph B" when it results in one "extreme" or two "marked" limitations in the following "areas of mental functioning a person uses in a work setting": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).

> [J.D.] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can stand and/or walk four hours with customary breaks. She can occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, and scaffolds. She can frequently, not constantly, balance. She should not work around unprotected heights or dangerous moving machinery. She can frequently, not constantly, talk to others (i.e., for swallowing issues, not mental health reasons). There needs to be ready access (physical proximity; not frequency of visits or time spent in restroom) to a restroom.

*Id.* at 22–23.

At Step 4, the ALJ found that J.D. "is capable of performing past relevant work as an Administrative Clerk. This work does not require the performance of work-related activities precluded by [J.D.]'s residual functional capacity." *Id.* at 26.

Accordingly, the ALJ found that J.D. "has not been under a disability, as defined in the Social Security Act, from May 13, 2022, the amended alleged onset date, through the date of [the ALJ's] decision." *Id.* at 29.

## DISCUSSION

J.D presents the following issues for my review: whether (1) the ALJ erred in assessing J.D.'s limitations; and (2) the ALJ's subjective symptom analysis was improper. *See* Dkt. 12 at 1. I answer both questions in the negative.

### A. THE ALJ DID NOT ERR IN ASSESSING J.D.'S RFC

J.D. contends the ALJ erred in assessing J.D.'s RFC because the ALJ: (1) based J.D.'s RFC solely on the ALJ's unsupported interpretation of medical records; (2) failed to explain how the RFC accounts for J.D.'s mild mental limitation in concentrating, persisting, or maintaining pace; and (3) failed to make an off-task absenteeism determination. I address each argument in turn.

#### *1. The ALJ Did Not Rely Solely on Her Own Opinion*

J.D. first argues that "the ALJ based [J.D.'s] RFC solely on [the ALJ's] unsupported interpretation of medical records, which warrants remand." Dkt. 12 at 8. This is simply not true. The ALJ *did* rely on medical opinions in crafting J.D.'s RFC. Specifically, the ALJ wrote:

> First, at the initial level, Dr. Gary Smith, M.D., found [J.D.] could perform work at the light exertional level without any additional limitations. Then, in July 2024, Dr. Douglas Back, M.D., also reviewed the evidence but found no severe impairments.
>
> Overall, the [ALJ] finds these opinions not persuasive. First, Dr. Back's opinion is entirely unsupported as he failed to adequately account for the totality of the evidence, which shows [J.D.] has required ongoing and extensive treatment for her impairments. Likewise, his finding of no severe impairments is also inconsistent with the objective evidence showing findings of abdominal tenderness on examination, shakiness, lightheadedness, and symptoms of chest pain/pressure. Dr. Smith's opinion, while more supportive and consistent with the evidence than Dr. Back's, is also not persuasive because he also failed to consider the combined effect of [J.D.]'s impairments making a range of light work without additional limitations to be not well supported. Most notably, Dr. Smith did not account for [J.D.]'s lightheadedness, which would require environmental limitations. Likewise, he also did not account for [J.D.]'s abdominal pain during the consultative examination. The [ALJ] also finds Dr. Smith's opinion to be inconsistent with the evidence, overall. For example, during the consultative examination, [J.D.] appeared "cachectic" and "too thin" with epigastric tenderness and guarding, which would require her to be a reduced level of light work. Dr. Smith also did not account for [J.D.]'s subjective complaints with reports in the record of chest pain and pressure, which also limits the exertional level of work she could perform. Regardless, the [ALJ] has provided [J.D.] physical limitations to account for her impairments and their associated symptoms, as discussed above.
>
> Finally, Dr. Prakash, the consultative examiner, concluded his physical examination of [J.D.] summarizing the findings made. Specifically, Dr. Prakash stated [J.D.] could pick up objects from the floor; she could pick up 30 pounds; and she was able to squat and touch her toes. The [ALJ] has considered this opinion and finds it inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) because there were no specific limitations set forth by Dr. Prakash. Instead, he summarized his findings rather than provide limitations that could be used in vocationally relevant terms. Regardless, the [ALJ] has considered this examination when assessing [J.D.]'s above [RFC] and has provided her physical limitations to account for her impairments and their associated symptoms, as already mentioned.

Dkt. 8 at 25 (cleaned up).

In arguing that the ALJ based J.D.'s RFC solely on her unsupported interpretation of medical records, J.D. relies on a number of cases. The cases J.D. invokes are inapposite. For example, in *T.M. v. Commissioner of Social Security*, the ALJ considered X-ray results—raw medical evidence—that "were not considered by the staff reviewing doctors at the initial or reconsideration levels." No. 3:24-cv-00301, 2025 WL 1424352, at *3 (S.D. Tex. May 16, 2025). Here, by contrast, J.D. fails to point to any raw medical evidence that was not considered by the state agency medical consultants that would likely change the outcome. J.D. had an October 14, 2024 upper GI endoscopy and colonoscopy and an October 18, 2024 exam that were not considered by the state agency medical consultants. The October 18, 2024 medical exam notes by J.D.'s provider, however, describe these diagnostic tests as presenting "[n]o significant findings." Dkt. 8-2 at 32. Specifically, J.D.'s provider described the colonoscopy as indicating that J.D.'s "Crohn's disease is in remission, with no evidence of cancer or concerning findings." *Id.* The endoscopy revealed "Barrett's esophagus with low-grade dysplasia, dilation performed." *Id.* The state agency medical consultants were both aware, however, of J.D.'s Barrett's esophagus diagnosis and the need for dilation. *See* Dkt. 8 at 67, 74. Accordingly, nothing about this October 2024 evidence suggested that the ALJ needed to procure another medical opinion.

Nor is *Tiede v. Dudek*, 770 F. Supp. 3d 965 (W.D. Tex. 2025), applicable to this case. In *Tiede*, "the record never contained *any* medical opinion regarding Plaintiff's ability to work." *Id.* at 972. In this case, the ALJ considered multiple medical opinions. In fact, the state agency medical consultants here considered the same evidence as the ALJ and found *fewer* limitations than the ALJ did. The court in *Fleming v. Saul* has perfectly summarized such a circumstance:

> [T]his is not a case in which there are no medical opinions of record, and the ALJ independently analyzed the raw medical data without any guidance from medical professionals. Nor is this a case in which the ALJ truly rejected all of the medical opinions of record and fashioned a completely distinctive RFC. Experienced ALJs can draw their own conclusions as to disability status based on accurate medical

> information. What Plaintiff characterizes as the ALJ substituting his opinion in this case is actually the ALJ properly interpreting the medical evidence to determine his capacity for work.

No. SA-19-cv-00701, 2020 WL 4601669, at *9 (W.D. Tex. Aug. 10, 2020) (cleaned up). Here, as in *Fleming*, the fact "[t]hat these medical experts found [J.D.] to be capable of a [higher level of work] . . . is ultimately supportive of the ALJ's RFC determination." *Id.*

Even if J.D. could show that the ALJ should have developed the medical record, she fails to demonstrate prejudice. In the Fifth Circuit, prejudice is established when a plaintiff shows that further developing the medical record "could and would have adduced *evidence* that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (emphasis added) (quotation omitted). J.D. argues that "additional evidence could have led to a more limiting RFC." Dkt. 12 at 8. But the sheer possibility of a different result is not *evidence*. Because J.D. does not point to any evidence that demonstrates "how additional consultative examinations [or otherwise developing the medical record] would have led to a more favorable decision," she fails to carry her burden to demonstrate prejudice. *Williams v. Berryhill*, No. 3:18-cv-1913, 2019 WL 4393635, at *13 (N.D. Tex. Sep. 13, 2019).

### ***2. The ALJ Was Not Required to Account for J.D.'s Mild Mental Limitations***

At Step 2, the ALJ found that J.D.'s medically determinable mental impairment of major depressive disorder was not severe. Regarding the paragraph B criteria, the ALJ found that J.D. has mild limitations in the functional areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* Dkt. 8 at 20–21. The ALJ concluded that "the evidence does not otherwise indicate that there is more than a minimal limitation in [J.D.]'s ability to do basic work activities." *Id.* at 22.

J.D. does not take issue with the ALJ's analysis of the paragraph B criteria or her Step 2 findings. Rather, J.D. contends that the ALJ erred by failing to account for J.D.'s mild limitation in concentrating, persisting, or maintaining pace when crafting J.D.'s RFC. *See* Dkt. 12 at 10. But J.D. fails to discuss or even cite the Fifth Circuit's decision in *Jeansonne v. Saul*, 855 F. App'x 193 (5th Cir. 2021), which the Commissioner cites for the proposition that "mild findings as to the 'paragraph B' criteria do not mandate the inclusion of mental limitations in the RFC, where the mild limitations do not affect a claimant's ability to do work." Dkt. 15 at 7.

On appeal, Jeansonne argued that it was "facial legal error" for the ALJ not to have accounted for the three mild limitations the ALJ assessed when evaluating the paragraph B criteria in crafting her RFC. Brief for Appellant at 30, *Jeansonne v. Saul*, No. 20-30570 (Nov. 23, 2020). Moreover, as here, Jeansonne, who "was of advanced age," argued that "[t]he ALJ's failure to account for [her] admitted mild mental functional limitations in the RFC finding was a significant legal error because the issue . . . was [her] mental capacity to perform semi-skilled work" as opposed to unskilled work. *Id.* at 13, 20.

The Fifth Circuit held:

> Because substantial evidence shows that Jeansonne's mild mental limitations do not significantly affect her ability to work, we also find no error at step five—whether the impairment prevents the claimant from performing any other substantial gainful activity. Generally, at step five, an ALJ considers the claimant's residual functional capacity ("RFC") as part of the determination of whether the claimant is unable to perform other substantial gainful activity. Although not binding on this Court, we have frequently looked to SSA rulings for guidance on what should be considered for a claimant's RFC. SSR 96-8p instructs that "*all* relevant evidence in the case record" should be considered for RFC, and "the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Nevertheless, "the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's *ability to do work-related activities*."

> As previously stated, the evidence supports a finding that Jeansonne's mild mental limitations do not significantly affect her ability to work. Therefore, we determine that the ALJ did not err in declining to consider Jeansonne's mental impairments at step five.

*Jeansonne*, 855 F. App'x at 197–98 (cleaned up). Although *Jeansonne* is not a precedential decision, it is almost perfectly apposite to this case and, as a Fifth Circuit opinion, surely merits at least as much persuasive force as district court opinions. *See, e.g.*, *Mayweather v. U.S. Comm'r Soc. Sec. Admin.*, No. 08-cv-0391, 2009 WL 311099, at *2 (W.D. La. Feb. 9, 2009) (Where a Fifth Circuit opinion "is unpublished and issued after January 1, 1996, . . . it is not precedential. Fifth Cir. R. 47.5.4. But it is certainly of persuasive value.").

J.D. does not contest the ALJ's Step 2 finding that her "medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in [her] ability to do basic work activities." Dkt. 8 at 22. Thus, I agree with the other district courts in this circuit that have confronted the argument J.D. raises here and at least identified *Jeansonne* as relevant: "ALJs may properly exclude non-severe mental limitations from the RFC assessment where substantial evidence supports the [psychiatric review technique] determinations that mental limitations do not significantly affect the claimant's capacity to perform work-related activities." *Fitzgerald v. O'Malley*, No. 7:23-cv-0209, 2024 WL 4575144, at *12 (S.D. Tex. Sep. 30, 2024); *see also Brown v. Comm'r of Soc. Sec.*, No. 7:23-cv-00084, 2024 WL 4169173, at *9 (N.D. Tex. May 1, 2024) ("Brown has not argued that substantial evidence did not support the ALJ's step two determination. Therefore, because the ALJ found at step two that Brown's non-severe mental impairments did not cause 'more than a minimal limitation in the claimant's ability to do basic work activities,' there was no error in not considering them in the RFC determination."); *Murray v. Saul*, No. 1:20-cv-0800, 2021 WL 3721447, at *4 (W.D. Tex. Aug. 23, 2021) (no error where "the ALJ failed to explain why Plaintiff's mild mental limitations did not warrant

additional limitations in Plaintiff's RFC"); *Wyman v. O'Malley*, No. 3:23-01636, 2024 WL 4969164, at *9 (W.D. La. Nov. 18, 2024) ("To the extent that the ALJ may have erred in how he structured his decision (by including a discussion of Wyman's mental impairments only in his step two analysis), any error was harmless."); *Brown v. Comm'r of Soc. Sec.*, No. 1:22-cv-1367, 2024 WL 115814, at *4 (W.D. Tex. Jan. 10, 2024) ("Here, the ALJ found 'no more than mild' limitations in the four 'paragraph B' criteria, and thus, properly excluded mental limitations from the RFC."); *Cruz v. Kijakazi*, No. SA-21-cv-01246, 2022 WL 17039318, at *6 (W.D. Tex. Nov. 17, 2022) ("Mild findings as to the Paragraph B criteria do not mandate the inclusion of mental limitations in the RFC, where the mild limitations do not affect the claimant's ability to do work.").

#### *3. The ALJ Was Not Required to Make an Off-Task Absenteeism Determination*

J.D. next argues that "if the ALJ found [J.D.] has persistence limitations, as the 'B Criteria' assessment indicates, such limitations needed to be presented to the VE for their impact on employability." Dkt. 12 at 13. As discussed in the preceding section, the ALJ was not required to account for J.D.'s nonsevere, mild persistence limitations when crafting J.D.'s RFC.

### B. THE ALJ PROPERLY EVALUATED J.D.'S SUBJECTIVE COMPLAINTS

J.D.'s final argument is that "the ALJ improperly dismissed [J.D.]'s subjective symptoms based on her lay interpretation." *Id.* at 16. Specifically, J.D. contends that "the ALJ repeatedly relied on isolated activities, such as [J.D.]'s ability to drive, prepare meals, watch TV, manage funds, and attend church" while ignoring "significant qualifications, such as [J.D.]'s need to take breaks and sit and drink tea between her daily activities . . . to calm her gastrointestinal system." *Id.*

When evaluating a claimant's subjective complaints of pain and other symptoms, the federal regulations and case law provide that "the ALJ must [first] determine whether there is a medically determinable impairment that is capable of producing that pain." *Eovaldi v. Astrue*, 729 F. Supp. 2d 848, 862 (S.D. Tex.

2010). "Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities." *Gachter v. Colvin*, No. 4:13-cv-168, 2014 WL 2526887, at *8 (N.D. Tex. June 4, 2014) (citing 20 C.F.R. § 404.1529(c) and SSR 96-7p, 1996 WL 374186, at *1). While an ALJ must consider subjective evidence relating to pain and other symptomology, it is within the ALJ's discretion to "determine credibility and weigh testimony." *Chrisner v. Astrue*, 249 F. App'x 354, 356 (5th Cir. 2007). This court can reverse the Commissioner's findings only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (cleaned up). That is not the case here.

J.D. reasons that her "Crohn's remission did not resolve the separate postsurgical symptoms [that J.D.] alleged prevented sustained work," such as "severe pressure and dysphagia with eating and drinking, recurrent nausea and vomiting, substantial weight loss, difficulty maintaining oral intake, [and total parenteral nutrition]." Dkt. 16 at 7. But at her most recent documented examination in October 2024, J.D. *denied* nausea and vomiting and weight loss. *See* Dkt. 8-2 at 33. At that October 2024 visit, J.D. weighed 141 pounds, which is an *increase*, not a decrease in weight. *Compare* Dkt. 8-1 at 892 (down to 122 pounds from 130 pounds in August 2023 due to nausea), *with* Dkt. 8-2 at 33 (denying nausea and vomiting in October 2024 with a recorded weight of 141 pounds). Additionally, the one and only time that J.D. was documented to have required parenteral nutrition was in 2021, *prior* to the amended alleged onset date. *See* Dkt. 8 at 472. I can hardly fault the ALJ for discounting subjective complaints of symptoms that J.D. herself most recently denied to her provider, are contradicted by the most recent medical evidence of record, or predate the amended alleged onset date.

## CONCLUSION

For the reasons discussed above, I find the Commissioner's decision supported by substantial evidence and free of legal error. I recommend that the Commissioner's decision be affirmed.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 5th day of November 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE